UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-49(DSD/BRT)

Ger Vang,

Plaintiff,

v.                                                    **ORDER**

Western-Southern Life
Assurance Company,

Defendant.

John H. Faricy, Jr., Esq., Vadim Trifel, Esq. and Faricy Law
Firm, P.A., 12 South Sixth Street, Suite 211, Minneapolis, MN
55402, counsel for plaintiff.

Quin C. Seiler, Esq., Justice Ericson Lindell and Winthrop &
Weinstine, P.A., 225 South Sixth Street, Suite 3500,
Minneapolis, MN 55402, counsel for defendant.

This matter is before the court upon the cross-motions for
summary judgment by plaintiff Ger Vang and defendant Western-
Southern Life Assurance Company (WSLAC). Based on a review of the
file, record, and proceedings herein, and for the following
reasons, the court denies plaintiff's motion and grants defendant's
motion.

**BACKGROUND**

This life insurance dispute arises out of WSLAC's denial of
benefits to plaintiff under two life insurance policies. WSLAC
issued the policies to plaintiff's aunt, Mao Vang, who named

plaintiff as the beneficiary.[1]  G. Vang Dep. Exs. 14 and 15.  Vang died on April 23, 2013 from metastic colon cancer.  Id. at 87:13-88:3; id. Ex. 16.

On October 6, 2011, Vang went to the Hennepin County Medical Center (HCMC) with complaints of stomach pain.  Lindell Decl. Ex. A, at 1-2.  Vang reported she was experiencing epigastric pain and nausea, and had been vomiting almost every day for three months, especially after eating.  Id. at 2.  HCMC conducted a battery of tests and scheduled an ultrasound for October 20, 2011.  Id. at 3.  On October 11, 2011, HCMC sent a letter to Vang informing her that she tested positive for a bacteria called H. Pylori, known to cause abdominal pain, and that her hemoglobin count was decreasing.  See id. at 13.  HCMC recommended treatment for the bacteria and follow-up hemoglobin tests.  Id.  HCMC requested that Vang call to discuss her results, and reminded her of the already scheduled ultrasound.  Id.  Vang never called HCMC and failed to show up for the ultrasound.  See id. at 1-38.

On January 19, 2012, Vang submitted an application to WSLAC for a $50,000 life insurance policy.  G. Vang Dep. at 52:4-17; id. Ex. 4.  The application informed Vang that her "statements and answers ... and medical examiners' reports will form the basis of any policy."  Id. Ex. 4, at 4.  The application also required Vang

---

[1] To avoid confusion, the court will refer to plaintiff Ger Vang as "plaintiff" and Mao Vang as "Vang."

to sign and confirm that her answers were "true and complete to the best of [her] knowledge and belief." Id. The application asked whether Vang had "received or been advised to receive any medical or surgical treatment or test" in the last ten years. Id. at 3. Vang answered "no." Id. The application also asked whether, in the past ten years, Vang "had or been treated for any abnormality or disease." Id. Vang again answered "no." Id.

On January 26, 2012, WSLAC conducted a standard medical examination of Vang. G. Vang Dep. at 61:5-62:15; id. Ex. 6. WSLAC asked Vang whether she had "ever been treated for or ever had ... recurrent indigestion or other disorder of the stomach, intestines, liver or gall bladder[.]" Id. Ex. 6. Vang answered "no." Id. WSLAC also asked Vang whether, in the past five years, she had been "advised to have any diagnostic test, hospitalization, or surgery which was not completed." Id. Vang again answered "no." Id. Finally, WSLAC asked Vang whether, in the past five years, she had been "a patient in a hospital, clinic, sanatorium, or other medical facility." Id. Vang answered "yes" and stated that she had "checkups and minor visits at HCMC" with "normal results." Id.

On February 2, 2012, Vang returned to HCMC seeking treatment for H. Pylori. Lindell Decl. Ex. A, at 17. Vang stated that she continued to suffer from the same symptoms and requested therapy. Id. HCMC started her on "triple therapy with amoxicillin, clindamycin and PPI b.i.d." Id. at 18.

3

On February 10, 2012, WSLAC delivered Policy W80526137 to Vang (the First Policy).  G. Vang Dep. at 82:11-83:18; id. Ex. 12.  The First Policy incorporated Vang's application and the medical examiner's report.  Id. Ex. 14.  Relevant to this dispute, the First Policy states, "The policy will take effect on the date You have received it, satisfied all delivery requirements, and paid the minimum initial premium as described in the Payment of Premiums section while the Insured is alive and in the same health as indicated in the application."  Id. at 17 (emphasis added).

On March 6, 2012, Vang submitted an application to WSLAC for a second $50,000 life insurance policy.  G. Vang Dep. at 60:8-24; id. Ex. 5.  The application included the same notices and questions as the previous one, and Vang provided the same answers.  Compare id. Ex. 4 with id. Ex. 5.

On March 11, 2012, Vang visited HealthEast St. John's Hospital (HealthEast) with complaints of significant abdominal pain, nausea, vomiting, weakness, and fatigue.  Lindell Decl. Ex. C, at 30-31.  Vang stated that she had lost ten to fifteen pounds due to her inability to eat.  Id. at 31.  HealthEast determined that Vang was suffering "H. pylori-related gastric inflammation."  Id.  HealthEast also noted that Vang was "initially admitted with a hemoglobin of 7.7," and that it administered two transfusions of red blood cells until her "hemoglobin was stable at 11."  Id.  HealthEast diagnosed her with partial obstruction of the ascending

4

colon and anemia, and discharged her on March 16, 2012. <u>Id.</u> at 30.

Vang returned to HealthEast on March 26, 2012, with symptoms of abdominal pain, nausea, and vomiting. <u>Id.</u> at 2. HealthEast diagnosed her with anemia and Stage IIIB adenocarcinoma of the colon. <u>Id.</u> She had surgery for the cancer, and was discharged on April 1, 2012. <u>Id.</u> at 2-3.

On May 1, 2012, WSLAC delivered the Policy W80537077 to Vang (the Second Policy). G. Vang Dep. at 83:21-84:19; <u>id.</u> Ex. 13. The Second Policy incorporated Vang's second application and the medical examiner's report from January 26, 2012. <u>Id.</u> Ex. 15. The Second Policy had the same clause as the First Policy, stating that it would not take effect unless "the Insured is alive and in the same health as indicated in the application." <u>Id.</u> at 17.

On April 23, 2013, Vang died from metastic colon cancer. <u>Id.</u> at 87:13-88:3; <u>id.</u> Ex. 16. Plaintiff, as the named beneficiary on both policies, filed a claim for death benefits with WSLAC.

Because Vang died within two years of issuance of the policies, WSLAC reviewed the claim. <u>Id.</u> Ex. 14, at 16; <u>id.</u> Ex. 15, at 16. WSLAC ordered Vang's medical records, and learned for the first time that she suffered from ongoing stomach pain, nausea, and vomiting. Trocchia Dep. at 25:10-26:1; Miller Dep. at 20:13-23. WSLAC also learned that she had been tested for and diagnosed with H. Pylori, had been advised to undergo an ultrasound, underwent blood testing, and was advised to follow up on her lowered

hemoglobin count – all before she applied for the policies. Trocchia Dep. at 25:10-26:1. WSLAC determined that Vang did not answer all questions on her applications truthfully. Id. at 37:21-39:8. WSLAC also determined that it would have denied Vang's applications if she had answered those questions truthfully, because WSLAC underwriting guidelines require "investigation to rule out serious underlying conditions" before issuing a policy. See id. Ex. B, at 47; id. at 33:1-36:4, 43:12-19, 55:2-56:7. WSLAC denied plaintiff's claim for death benefits and refunded the premiums paid on the policies. Miller Dep. at 30:22-31:7; id. Ex. A, at 5; G. Vang Dep. at 28:15-24; 37:1-7.

On December 12, 2014, plaintiff served WSLAC with a complaint to be filed in Anoka County District Court, alleging breach of contract and requesting declaratory relief ordering WSLAC to provide life insurance benefits. WSLAC removed the case to this court on January 9, 2015. The parties now bring cross-motions for summary judgment.

## DISCUSSION

### I.   Standards of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

6

A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  Id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party.  Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record."  Fed R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

## II. Contract Formation

WSLAC first argues that it never entered into a contract with Vang because she was not able to meet a condition precedent to forming the contract.  Specifically, WSLAC argues that Vang was not in the same health as indicated on her applications.

"An application for insurance is merely an offer; no contract arises until the application is accepted by the insurer and all

conditions precedent are complied with." <u>Frank v. Illinois Farmers Ins. Co.</u>, 336 N.W.2d 307, 310 (Minn. 1983).   A life insurance policy contains a condition precedent if it requires that the applicant be "in the same condition of health described in the application." <u>Paine v. Pac. Mut. Life Ins. Co.</u>, 51 F. 689, 690 (8th Cir. 1892); <u>see also</u> <u>N. Am. Co. for Life & Health Ins. v. Hoh</u>, 334 F. App'x 586, 588 (4th Cir. 2009) (same).   If the applicant does not satisfy that condition precedent, no contract is formed and the policy cannot be enforced against the insurer.  <u>Paine</u>, 51 F. at 690; <u>Hoh</u>, 334 F. App'x at 588.

Here, both policies required that Vang be "in the same health as indicated in the application." G. Vang Dep. Ex. 14, at 17; <u>id.</u> Ex. 15, at 17.  When Vang completed the application for the First Policy, she provided no indication that she had been suffering ongoing epigastric pain, nausea, and vomiting.  She also failed to indicate that she had a positive diagnosis for H. Pylori and that she had been advised to seek medical testing and treatment.  As such, Vang was not in the same health as indicated on the application for the First Policy.[2]

---

[2] Pajlis Vaj, plaintiff's wife, submitted an affidavit stating that Vang lived with her and plaintiff, and that Vang had "been healthy and active until we found out that she was diagnosed with colon cancer."  Vaj Aff. ¶¶ 1-7.  Vaj also asserts that Vang "did not show any signs of pain or anything until one or two weeks prior to her stomach pain that brought her to the ER at St. John's Hospital for the first time."  <u>Id.</u> ¶ 7.   However, Vaj's observations do not negate the medical records or create a factual issue as to Vang's health during the relevant time.

When Vang completed the application for the Second Policy, she failed to disclose the same information that she failed to disclose on her application for the First Policy.  In addition, in the interim, Vang returned to HCMC and requested treatment because she continued to suffer from the same symptoms.  HCMC started Vang on antibiotic therapy to combat the H. Pylori.  Vang failed to disclose this additional information and, as in the First Policy, was not in the same health as indicated on her application.

Vang did not satisfy the condition precedent that she be in the same health as indicated on the applications.  Accordingly, no contract was formed and plaintiff cannot obtain the death benefits from the policies.  As a result, summary judgment is warranted in favor of WSLAC.

## III. Voidable Contract

WSLAC further argues that, even if contracts had been formed, it had the right to void them based on Vang's material misrepresentations.  Plaintiff responds that WSLAC's medical examination prevents it from relying on Vang's representations regarding her health.

"An insurance policy is voidable if it was produced through a material misrepresentation." PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Trust, 970 F. Supp. 2d 932, 941 (D. Minn. 2013). "A misrepresentation is material if it substantially influenced the insurer's decision to provide coverage."  Id. at 942.

Vang made no disclosure of her medical history as it related to her epigastric pain, nausea, vomiting, or lowered hemoglobin count. If she had disclosed that information, WSLAC would have denied her applications until her symptoms had been fully evaluated, per its underwriting guidelines. Thus, Vang's failure to disclose that information substantially influenced WSLAC's decision to provide coverage. Accordingly, Vang's misrepresentations were material and WSLAC may void the policies.

Plaintiff cites Wanshura v. State Farm Life Insurance Company for the proposition that an insurance company that conducts a medical examination of the insured cannot later void the policy. 275 N.W.2d 559, 567-68 (Minn. 1978). Plaintiff's reliance on Wanshura is misplaced, and the case actually supports WSLAC's position. In Wanshura, the insured "disclosed a prior history of cancer" and "all pertinent facts regarding [his] medical history" on his life insurance application. Id. at 560. The insurance company conducted a medical examination and, having been notified of a basis for inquiry, looked specifically into whether there were signs of a "renewed cancerous condition." Id. The insurance company found none. Id. The insurance company issued a life insurance policy and "charged a higher premium than normal" because of the insured's medical history. Id. at 567.

In stark contrast, Vang made no meaningful disclosure of her symptoms or medical history when she submitted her applications.

10

Accordingly, WSLAC was not generally aware of her medical history and had no basis to inquire into any particular medical condition. An insurer can rely on an applicant's representations, despite conducting a medical examination, if the applicant's answers do not create a basis for inquiry. Cf. Domke v. Farmers & Mechanics Sav. Bank, 363 N.W.2d 898, 900 (Minn. Ct. App. 1985) ("An insurer's failure to inquire when a basis for inquiry is set out on the application may constitute a waiver of the right to use the nondisclosure as a basis for denying coverage.").

The only semblance of a disclosure made by Vang during the medical examination was that she had gone to HCMC for a "checkup" that was "normal." G. Vang Dep. Ex. 6. The disclosure provides no indication of Vang's symptoms, nor her diagnosis. Thus, there was no basis for inquiry which would preclude WSLAC from relying on Vang's representations. As a result, WSLAC was entitled to void the policies, and summary judgment is warranted in its favor.

**CONCLUSION**

Accordingly, based on the above, IT IS HEREBY ORDERED that:

1.    WSLAC's motion for summary judgment [ECF No. 28] is granted; and

2.    Plaintiff's motion for summary judgment [ECF No. 24] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  March 1, 2016

s/David S. Doty
David S. Doty, Judge
United States District Court
